# No. 24-50088

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Enriqueta Diaz,

*Plaintiff - Appellee*

v.

Ramsey English Cantu, MAVERICK COUNTY JUDGE; ROXANNA RIOS, COMMISSIONER PRECINCT 2; OLGA RAMOS, COMMISSIONER PRECINCT 3; ROBERTO RUIZ, COMMISSIONER PRECINCT 4,

*Defendants - Appellants*

## On Appeal from

United States District Court for the Western District of Texas, Del Rio Division

2:23-CV-00060-AM

## BRIEF OF APPELLEE ENRIQUETA DIAZ

SUBMITTED BY:

Matthew S. Manning
State Bar No. 24075847
matt@wcctxlaw.com
Webb, Cason & Manning, P.C.
710 N. Mesquite Street
Corpus Christi, TX 78401
T: (361) 887-1031
F: (361) 887-0903

Counsel for Plaintiff-Appellant
Enriqueta Diaz

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th C<small>IR</small> Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellee: | Counsel for Appellees: |
|-----------|------------------------|
| Enriqueta Diaz | Matthew Manning of Webb, Cason & Manning, P.C., Corpus Christi, TX |

| Appellants: | Counsel for Appellants: |
|-------------|-------------------------|
| Ramsey English Cantu<br>Roxanna Rios<br>Olga Ramos<br>Roberto Ruiz | Scott M. Tschirhart<br>Clarissa M. Rodriguez<br>Denton, Navarro, Rodriguez, Bernal, Santee, and Zech, Austin, TX |

/s/Matthew S. Manning
Attorney of Record for Appellee
Enriqueta Diaz

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is requested. This case involves a robust factual record and presents legal issues that are intricate and novel. The decision by this Court will affect not only the parties to this litigation, but may have a direct effect upon parties across the state of Texas.

This case raises constitutional issues that have been litigated often in the United States Supreme Court and the Fifth Circuit Court of Appeals, but not frequently in the factual context in which this appeal is presented. The opportunity to address these issues in greater detail to this Court, and to respond to inquiries from this Court, will aid the Court in its decision-making process.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS** .................................................. iii

**STATEMENT REGARDING ORAL ARGUMENT** ...................................... iv

**TABLE OF CONTENTS** ................................................................................ v

**TABLE OF AUTHORITIES** ......................................................................... 1

**JURISDICTIONAL STATEMENT** .............................................................. 3

**STATEMENT OF THE ISSUES** ................................................................. 3

    **I.   The trial court correctly concluded that immunity should not attach for any of the Defendants** ......................................................................... 3

    **II.  This Court has not foreclosed bystander liability as a claim in non-law enforcement contexts** ................................................................ 4

**STATEMENT OF THE CASE** .................................................................... 4

**BACKGROUND** ............................................................................................ 5

**SUMMARY OF THE ARGUMENT** ........................................................... 9

    **I.   The trial court correctly concluded that immunity should not attach for any of the Defendants** ......................................................................... 9

    **II.  This Court has not foreclosed bystander liability as a claim in non-law enforcement contexts** ............................................................ 10

**ARGUMENT** .............................................................................................. 11

    **I.   STANDARD OF REVIEW** ............................................................ 11

    **II.  The trial court correctly concluded that immunity should not attach for any of the Defendants** ....................................................................... 13

    **1.   A County "Judge" Is Not Immune When Acting As an Administrator, Especially When He Explicitly Does Not Possess the Power He is Attempting to Exert** .................................................................................. 13

    **2.   The trial court properly declined to attach qualified immunity to any of the Defendants** ................................................................................ 18

    **3.   Sovereign Immunity is Inappropriate in This Case, as the Act in question is an ultra vires act** ........................................................... 26

**III. This Court has not foreclosed bystander liability as a claim in non-law enforcement contexts** .............................................................29

**CONCLUSION** .............................................................................31

**CERTIFICATE OF SERVICE** ....................................................33

**CERTIFICATE OF COMPLIANCE** ............................................34

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987)..................................................20

*Anderson v. Jackson*, 556 F.3d 351, 355 (5th Cir. 2009)......................................11

*Armstrong v. Ashley*, 60 F.4th 262, 272 n. 10 (5th Cir. 2023) .............................12

*Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211-12 (3d Cir. 2001)........................23

*City of El Paso, v. Heinrich,* 284 S.W.3d 366, 372 (Tex. 2009).............................27

*Clark v. Coupe*, 55 F.4th 167, 187 (3d Cir. 2022) ................................................23

*Cobb v. Harrington*, 144 Tex. 360 (Tex. 1945) ...................................................28

*Davis v. Tarrant County, Tex.*, 565 F.3d 214, 217 (5th Cir. 2009)............11, 17, 18

*Davis v. Tarrant County, Tex.*, 565 F.3d 214, 222 (5th Cir. 2009)........................15

*Douthit v. Jones*, 619 F.2d 527, 534-35 (5th Cir. 1980) .......................................19

*E.D. v. Sharkey*. 928 F.3d 299, 308-09 (3d Cir. 2019)..........................................23

*Edger v. McCabe*, 84 F.4th 1230, 1235 (11th Cir. 2023).......................................22

*Ex Parte Rowland*, 104 U.S. 604 (1881)...............................................................18

*Ex Parte Young*, 209 U.S. 123 (1908)...................................................................27

*Forrester v. White*, 484 U.S. 219, 229 (1988).......................................................15

*Frank v. Delta Airlines*, 314 F.3d 195, 197 (5th Cir. 2002)..................................11

*Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) ...........................................19

*Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020)...........................................19

*Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995)........................................................29

*Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). ...........................................27

*Hamilton v. Kindred,* 845 F.3d 659 (5th Cir. 2017).........................................30, 31

*Harper v. Merckle,* 638 F.2d 848, 851 (5th Cir. 1980) ....................................15, 17

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ............................................................20

*Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016) .................................................................................................................28

*Johnson v. Bowe*, 856 Fed. Appx. 487, 492 (5th Cir. 2021) .................................12

*Kane v. Barger*, 902 F.3d 185, 195 (3d Cir. 2018) ..........................................23, 24

*Knapp v. USDA,* 796 F.3d 445 (5th Cir. 2015) .....................................................31

*Lynch v. Johnson*, 420 F.d 818 (6th Cir. 1970)......................................................18

*Malina v. Gonzales*, 994 F.2d 1121, 1126 (5th Cir. 1993)....................................28

*McClelland v. Katy Ind. Sch. Dist.*, 63 F.4th 996, 1005 (5th Cir. 2023).................19

*Mercado v. City of Orlando*, 407 F.3d 1152, 1158 (11th Cir. 2005) .....................22

*NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 393 (5th Cir. 2015).......................11

1

*Randall v. Prince George's Cty.,* 302 F.3d 188, 204 (4th Cir. 2002) .....................31

*Sheffield v. Buckingham*, 2023 U.S. App. LEXIS 19668, *5 (5th Cir. 2023).........11

*Stump v. Sparkman*, 435 U.S. 349, 359-64 (1978)............................................15, 17

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002) ....................................32

*U.S. v. Lanier*, 520 U.S. 259, 265 n.5 (1997)..........................................................16

*U.S. v. Lanier*, 520 U.S. 259, 270-71 (1997) .........................................................21

*U.S. v. Lanier*, 73 F.3d 1380, 1410 (6th Cir. 1996) ...............................................21

*United States v. Abbitt,* 2023 U.S. App. LEXIS 28672 (5th Cir. 2023).................27

*United States v. Aguilar*, 515 U.S. 593 (1995)........................................................22

*United States v. Stokes*, 506 F.2d 771, 776 (5th Cir. 1975) .............................21, 22

*United States v. Teel*, 299 Fed. Appx. 387, 389 (5th Cir. 2008) ............................22

*United States v. Wilson,* 133 F.3d 251, 261 (4th Cir. 1997) ..................................31

*United States v. Wiltberger,* 18 U.S. 76 (1820)......................................................21

*Villarreal v. City of Laredo*, 94 F.4th 374, 384 (5th Cir. 2024)......................11, 12

*Whitley v. Hanna,* 726 F.3d 631, 646 (5th Cir. 2013).........................................4, 29

*Williams v. Sec'y Pennsylvania Dep't of Corrs.*, 848 F.3d 549, 570-71 (3d Cir. 2022) ...............................................................................................................23

**Statutes**

18 U.S.C. §242 ...................................................................................................20, 21

28 U.S.C § 1291 ........................................................................................................3

28 U.S.C § 1331 ........................................................................................................3

42 U.S.C. §1983 .................................................................................................20, 21

Tex. Gov. Code. §81.023 ....................................................................................5, 16

## JURISDICTIONAL STATEMENT

This honorable Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C § 1331, as this is an appeal from the district court's denial of Appellants' motion to dismiss Appellee's *First Amended* Complaint. Appellants appealed from the United States District Court for the Western District of Texas. ROA.708-710

## STATEMENT OF THE ISSUES

This appeal raises questions concerning judicial immunity for a County Judge in the context of the Commissioners Court and bystander liability as a claim asserted against non-law enforcement government officers.

I. THE TRIAL COURT CORRECTLY CONCLUDED THAT IMMUNITY SHOULD NOT ATTACH FOR ANY OF THE DEFENDANTS

    A. Appellant Cantu is not entitled to judicial immunity.

        a. Appellant Cantu was acting in a non-judicial capacity when he unilaterally held Appellee in contempt.

        b. The matter before the Commissioners Court at the time Appellant Cantu held Appellee in contempt was not a "case" in the manner contemplated by judicial immunity.

    B. None of the Appellants are entitled to qualified immunity.

a. Appellee's right to be free from arrest without probable cause was clearly established at the time of her arrest.

b. The law authorizing Commissioners Court to hold someone in contempt collectively clearly establishes an accused's rights under the statute: namely that their contempt must be decided by the Commissioners Court as a collective body.

C. Sovereign immunity is inapplicable in this case.

**II.** **THIS COURT HAS NOT FORECLOSED BYSTANDER LIABILITY AS A CLAIM IN NON-LAW ENFORCEMENT CONTEXTS**

A. This Court's decision in *Whitley v. Hanna* shows that bystander liability may properly attach to any officer who neglects to intervene when they see another officer violating a person's rights

## STATEMENT OF THE CASE

Appellants appealed the district court's *Order,* issued 5 February 2024, denying Appellants' motion to dismiss Appellee's *First Amended Complaint*. ROA.687-700.

Appellee's *First Amended Complaint* alleges a violation of her Fourth Amendment right to be free from unreasonable seizures. ROA.95. Appellee alleged

she was held in contempt by Appellant Cantu, the County Judge of Maverick County, Texas, during a Maverick County Commissioners Court meeting on 30 October 2023. ROA.94-95.

Her *First Amended Complaint* further alleges that three Maverick County Commissioners – Appellants Rios, Ramos, and Ruiz – then violated her rights as they watched her be held in contempt unilaterally by Appellant Cantu, in direct violation of Section 81.023 of the Texas Government Code, which authorizes the entire Commissioners Court to hold someone in contempt and punish them, where appropriate.

Appellants filed their motion to dismiss on 4 January 2024, alleging various immunities and seeking dismissal pursuant to Rule 12 of the Federal Rules of Civil Procedure. ROA.132. The trial court properly denied Appellants' motion to dismiss on 5 February 2024. ROA.687-700. This appeal followed. ROA.708-710.

## BACKGROUND

On 10 October 2023, Ms. Isamari S. Villarreal, Elections Administrator for Maverick County, Texas, was presented with a petition signed by over 5% of the registered voters of Maverick County, wherein such signatories were demanding an election on certificates of obligation in the amount of $7.2 million, sought to be issued by Maverick County. ROA.94, ¶ 9.

Ms. Villarreal's office verified the requisite number of signatures, verifying same on 27 October 2023. The total number of signatures required to force the election as provided under state law, Section 271.049(c), Texas Local Government Code, was 1552 (5% of the registered voters). The petition presented bore 1,665 verified signatures, entitling Ms. Diaz and the other residents of Maverick County to an election on the certificates of obligation (COs). ROA.94, ¶ 10.

Thereafter, on 30 October 2023, the Maverick County Commissioners Court held a Commissioners Court meeting. ROA.94, ¶ 11.

During the meeting, the subject of the COs and their issuance came up. The meeting grew tense, with Appellant Cantu and Ms. Diaz, the eighty-one (81) year old former County Judge of Maverick County, having a series of tense verbal exchanges. Appellant Cantu then threatened to hold Ms. Diaz in contempt if she continued talking. ROA.94, ¶ 12-14.

Appellants Roxanna Rios, Olga Ramos, and Roberto Ruiz, all in plain view of Appellant Cantu's probable causeless threat to detain and detention of Ms. Diaz did not attempt to intervene or remind Appellant Cantu that he did not have the authority to hold Ms. Diaz in contempt as threatened. ROA.94-95, ¶¶ 13-14.

Appellant Cantu, believing Ms. Diaz had continued talking, then ordered her taken into custody by a law enforcement officer, who escorted Ms. Diaz outside

where she was not permitted to re-enter the Commissioners Court meeting and was, at some point, outside in the rain. ROA.95, ¶¶ 15-16.

Ms. Diaz was detained for approximately three to four hours in the rain. On information and belief, during such time as Ms. Diaz was being detained, Appellant Cantu and Maverick County deputies conferred on whether he in fact had jurisdiction to hold her in contempt and/or detain her as he was currently doing. ROA.95, ¶ 18.

At some point after Ms. Diaz's initial detention began, Appellant Cantu issued his *Order of Contempt of Court*, wherein he directed the Maverick County Sheriff to "hold Enriqueta Diaz in confinement at the Maverick County Jail for 24 hours commencing from the time of arrest and released no sooner," conferring with the Maverick County Attorney regarding its issuance. ROA.95, ¶ 19.

The *Order* further went on to issue a threatening edict, reading: "Any deviation from this Court Order can and will result in further contempt findings for any individuals interfering with this matter." ROA.95, ¶ 20.

Thereafter, Ms. Diaz was booked into the Maverick County Jail and released shortly after booking. ROA.95, ¶ 21.

On 6 November 2023, Appellee sued the Appellants party to this litigation, seeking injunctive relief from the issuance of the certificates of obligation. ROA.12-15.

Two days later, the trial court denied Appellee's request for a temporary restraining order. ROA 40-44. The trial court then permitted Appellee to proceed *in forma pauperis*, setting a hearing for the preliminary injunction on 14 November 2023. ROA.44. Appellee was appointed counsel on 16 November 2023. ROA.51.

On 20 November 2023, Appellee filed her *Supplement to Plaintiff's Original Complaint and Request for Injunction and Motion for Leave to File an Amended Complaint and Request for Injunction.* ROA.56-60.

The next day, 21 November 2023, the parties agreed to a preliminary injunction following a continuation of the hearing commenced on 14 November 2023, which the trial court memorialized. ROA.61. The trial court instructed Appellee to amend her complaint and issued a scheduling order. ROA.62-63.

Appellants filed their Original Answer on 26 November 2023. ROA.66-70.

After two motions for leave to file her amended complaint, the trial court granted her motion and authorized the filing of her *First Amended Complaint*. ROA.92.

Appellants moved to dismiss Appellee's *First Amended Complaint* on 4 January 2024. ROA.132-146. Appellee responded to Appellants' motion. ROA.443-452.

On 1 February 2024, Appellants filed their *Reply to Plaintiff's Response to Defendants' Rule 12(b) Motion to Dismiss Plaintiff's Amended Complaint.* ROA.676-686.

On 2 February 2024, the trial court held a hearing on Appellants' motion to dismiss. ROA.8 (entry no. 61).

On 5 February 2024, the trial court properly denied Appellants' motion to dismiss. ROA.8 (entry no. 62). Appellants appealed the trial court's order on 5 February 2024. ROA.708-710.

## SUMMARY OF THE ARGUMENT

### I. THE TRIAL COURT CORRECTLY CONCLUDED THAT IMMUNITY SHOULD NOT ATTACH FOR ANY OF THE DEFENDANTS

Appellant Cantu is not entitled to judicial immunity because he was not acting in a judicial capacity when he held Appellee in contempt in the Maverick County Commissioners Court. He was, instead, acting as an administrator, presiding over matters of county governance, not a case in controversy.

Appellant Cantu, by statute, did not have the authority to hold Appellee in contempt, at least not unilaterally. His attempt to do so was without judicial

authority, probable cause, or the necessary condition precedent of the Maverick County Commissioners Court voting to hold Appellee in contempt.

Appellants Rios, Ramos, and Ruiz are not entitled to qualified immunity because the statute authorizing contempt in Commissioners Court requires the *collective* body to punish a person held in contempt.

Sovereign immunity should not attach because Appellants cannot avail themselves of sovereign immunity for an *ultra vires* act as outlined by the statute.

## II. THIS COURT HAS NOT FORECLOSED BYSTANDER LIABILITY AS A CLAIM IN NON-LAW ENFORCEMENT CONTEXTS

The statute put all four Appellants on notice as to what was required to legally punish someone for contempt in the Commissioners Court. Accordingly, this situation required intervention by Appellants Rios, Ramos, and Ruiz once they observed Appellant Cantu attempting to unilaterally hold in contempt and punish Appellee. There is no requirement that the Appellant commissioners be law enforcement officers for this claim to apply to them, as this Court's opinion in *Whitley v. Hanna* has no such requirement.

# ARGUMENT

## I. STANDARD OF REVIEW

"This court reviews the district court's order [denying] a Rule 12(b)(6) motion de novo to determine whether the facts pled state plausible claims cognizable in law." *Villarreal v. City of Laredo*, 94 F.4th 374, 384 (5th Cir. 2024)(citing *NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 393 (5th Cir. 2015)). In such review, the Court uses "the same standard as the district court." *Davis v. Tarrant County, Tex.*, 565 F.3d 214, 217 (5th Cir. 2009)(citing *Frank v. Delta Airlines*, 314 F.3d 195, 197 (5th Cir. 2002)).

With respect to a preliminary injunction, this Court reviews the district court's decision to grant or deny a preliminary injunction for abuse of discretion. *Sheffield v. Buckingham*, 2023 U.S. App. LEXIS 19668, *5 (5th Cir. 2023)(citing *Anderson v. Jackson*, 556 F.3d 351, 355 (5th Cir. 2009)).

This Court has held that "[w]hen ruling on a Rule 12 motion, a court may consider 'documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Villarreal*, at 383, n. 2. (citing *Armstrong v. Ashley*, 60 F.4th 262, 272 n. 10 (5th Cir. 2023)). This Court has further held that "[d]ocuments can also be considered part of the pleadings if the court may take judicial notice of them." *Johnson v. Bowe*, 856 Fed. Appx. 487, 492 (5th Cir. 2021).

In the instant case, Appellants have appealed the denial of a Rule 12(b)(6) motion in the trial court. ROA.8 (entry no. 63). The Rule 12 motion was filed and argued after the Court held a "two-part preliminary injunction hearing, the transcripts of which are part of the record in this matter." ROA.687, n.1. The parties reached an agreement to enter a preliminary injunction, which the trial court "memorialized." *Id.*; *see also* ROA.4 (entry no. 21).

In her response to Appellants' motion to dismiss in the trial court, Appellee requested that the trial court take judicial notice of "the facts adduced before it in the [two prior] hearings held on 14 November 2023 and 20 November 2023, pursuant to Rule 201 of the Federal Rules of Evidence." ROA.443. The transcript of the first part of the two-part hearing was attached as an exhibit to Appellee's response. *Id.* In its *Order* that is the basis for the appeal, the Court did not formally take judicial notice; however, the Court referenced the testimony taken, going so far as to include a portion of the testimony in the text of the order. *Id.*, at 4.

Consequently, Appellee respectfully urges this Court to adopt an abuse of discretion standard of review in this case, as the trial court assiduously evaluated the evidence, in the form of testimony, documents, and other materials. As such, this appeal is functionally an evaluation of the trial court's decision in light of the evidence adduced at the hearings on the preliminary injunction. Such standard of review is appropriate as the trial court's evaluations of credibility and application of

the law with respect to immunities did not occur in a vacuum — e.g. solely on the pleadings — as is customarily the case in rulings on Rule 12(b) motions. Application of de novo or any other standard of review eschews the trial court's efforts and disregards valuable judicial resources expended and evidence considered.

## II.    THE TRIAL COURT CORRECTLY CONCLUDED THAT IMMUNITY SHOULD NOT ATTACH FOR ANY OF THE DEFENDANTS

Appellants' arguments for the application of various immunities are a legal house of cards built on unsupported factual foundations. Each respective immunity claimed is firmly outside the realm of reasonable debate as to the immunity's application in this case. Appellee contends that the trial court's denial to attach Defendants' sundry immunities asserted was proper.

### 1.    A COUNTY "JUDGE" IS NOT IMMUNE WHEN ACTING AS AN ADMINISTRATOR, ESPECIALLY WHEN HE EXPLICITLY DOES NOT POSSESS THE POWER HE IS ATTEMPTING TO EXERT

It could not be more salient that Appellant Cantu was acting as an administrator, not a judge, at the time he unilaterally held Appellee in contempt during the Maverick County Commissioners Court meeting on 30 October 2023. The Agenda from the Special Meeting held by the Commissioners Court at issue illuminates this notion, showing that the Commissioners Court – and the County Judge – were considering decidedly non-judicial matters like approving the use of

Maverick County Lake for a bake sale; installing street lights and speed humps; and accounts payable. ROA.702-705.

On the date in question, the Commissioners Court was discussing the issuance of certificates of obligation to fund a water development project in the County and an associated petition to force that issuance to an election. ROA.704-705; ROA.736: 14-16. Appellee addressed the Commissioners Court as a *citizen*[2], not a litigant, advising the Commissioners Court that "they need[ed] to be careful about what they're going to do" with respect to the issuance of the debt. ROA.737: 9-11. Shortly thereafter, Appellant Cantu was "waving the petition or some paper he had…saying…[t]he gall of you coming to Commissioners Court and telling us that we're violating the law when all this is fraud…" ROA.741: 3-6. Appellee's arrest came during a series of exchanges related to the petition and the election mandated by state law, not a presentation before the court as a litigant. ROA.744: 4-9.

This Court has appropriately adhered to the Supreme Court's extension of judicial immunity to "judicial acts" except those that "fall outside the judge's subject matter jurisdiction." *Harper v. Merckle,* 638 F.2d 848, 851 (5th Cir. 1980)(citing *Stump v. Sparkman*, 435 U.S. 349, 359-64 (1978)); *see also* ROA.691 (citing *Davis v. Tarrant County, Tex.*, 565 F.3d 214, 222 (5th Cir. 2009)("In other words, judicial

---

[2] *See* ROA.18 at the heading "Citizens Communications and Recognitions," affording citizens an opportunity to address the Commissioners Court en masse.

acts are protected but non-judicial acts are not"). While in limited circumstances a County Judge may act as a "judge" in the judicial sense, the trial court appropriately found that a County Judge's role "is both judicial and administrative—requiring *careful* attention to the analytical factors [delineated in *Davis v. Tarrant County, Tex.*]." ROA.693 (emphasis added). Administrative acts, while often essential, "have not been regarded as judicial acts." *Davis*, at 222 (citing *Forrester v. White*, 484 U.S. 219, 229 (1988)).

The trial court properly applied this Court's four-factor test articulated in *Davis* in its analysis of Appellant Cantu's unilateral contempt holding. As to the first factor — "whether the complained-of-act is a normal judicial function" — the trial court correctly found that while the holding of contempt *is* a normal judicial function, it cannot be so where the state legislature has vested that power in another entity instead, as it has in Section 81.023 of the Texas Government Code: "That statute casts a different light in the contempt powers of a County Judge when presiding over a Commissioners Court meeting — they don't exist." ROA.693.

Moreover, the trial court noted that Appellant's acts are "*explicitly barred by statute* – he does not have the authority to unilaterally impose a contempt order in this context. Such orders must come from the Commissioners Court as a whole." *Id.* (emphasis added). This reading "reflects the deference due to the legislature," as the

United States Supreme Court noted in *U.S. v. Lanier*, 520 U.S. 259, 265 n.5 (1997), discussed further *infra. See also* ROA.215.

Furthermore, even assuming *arguendo* that Appellant Cantu had some nebulous authority to hold Appellee in contempt, he most assuredly does not have authority to *punish* her for said contempt under the statute; in which case, the exertion of his power through her punishment — "dictatorial,"[3] as the trial court characterized it — would still be in direct violation of the law.

Accordingly, such function cannot be said to be one within the judge's subject matter jurisdiction where the authority to do so explicitly rests elsewhere, irrespective of whether it is a "normal" judicial function.

As to the second factor, this act did occur in the "courtroom or appropriate adjunct spaces such as the judge's chambers." *Davis*, at 222. The judge, however, was in "street clothes, not judicial attire," presiding over a decidedly non-judicial issue concerning the issuance of public debt. (*See Harper v. Merckle*, 638 F.2d 848 at 850, discussing the judge in that case not being clad in judicial attire.)

The trial court, appropriately noted that the agenda for the Commissioners Court meeting where this occurred showed that the Court was not acting in a judicial capacity. ROA.695. Invoking *Stump v. Sparkman*, the trial court echoed the United

---

[3] ROA.696.

States Supreme Court's position that "nomenclature is not the test," but instead "the nature of the act itself." ROA.695 (citing *Stump*, at 362).

In that same vein, the trial court noted that the Supreme Court in *Ex Parte Rowland* and the Sixth Circuit in *Lynch v. Johnson* declined to extend judicial immunity to governmental bodies comparable to the Commissioners Court in Kentucky and Alabama. *See Ex Parte Rowland*, 104 U.S. 604 (1881); *Lynch v. Johnson*, 420 F.d 818 (6th Cir. 1970). In both instances, the Supreme Court and Sixth Circuit found that the governmental bodies at issue were tasked with managing the county's affairs — not acting judicially — as is the case here. In this regard, Appellee and all other citizens present at the meeting on 30 October 2023 appeared in front of Appellant Cantu in his official capacity as an administrator, not as a judge.

On the third factor of the test, as with the others, the trial court's application was spot-on and complete on its own. However, in further support of the denial of judicial immunity, Appellee would direct this Court to the plain meaning of its words in *Davis v. Tarrant County, Tex*. Appellee was not arrested during the presentation of a *case* pending before the court. She was arrested during public discussion of a consent agenda item before the Commissioners Court — the County's board of governance. ROA.702-705. There was no opposing party; no docketed case number or docket entry; and most importantly, no *adjudicative* matter to be resolved by any judge, let alone the County Judge. Accordingly, his unilateral attempt to hold her in

contempt in contravention of the statute is without legal basis or authority, and the trial court properly declined to immunize Appellant Cantu.

## 2. THE TRIAL COURT PROPERLY DECLINED TO ATTACH QUALIFIED IMMUNITY TO ANY OF THE DEFENDANTS

Appellants' assertions that they ought be immunized by qualified immunity are on equally unstable, unsupported legal and factual grounds as Appellant Cantu's claims discussed *supra*.

As noted by the trial court, once Appellants invoked qualified immunity, it would customarily become Appellee's burden to show that Appellants "(1)violated a statutory or constitutional right, and (2) the right was clearly established at the time." ROA.689 (citing *McClelland v. Katy Ind. Sch. Dist.*, 63 F.4th 996, 1005 (5th Cir. 2023)). Cases analyzing a qualified immunity defense may be analyzed on a single prong of the analysis, and the two prongs may be taken in any order by the court. *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020). In the wrongful arrest context, however, this court has said in *Douthit v. Jones* that such Appellant must "demonstrate that he acted with a good faith belief that his actions were within his lawful authority, and that reasonable grounds existed for this belief based upon objective circumstances at the time he acted." *Douthit v. Jones*, 619 F.2d 527, 534-35 (5th Cir. 1980). *See also* ROA.689.

Generally speaking, it is "beyond question that [Appellee] has a clearly established right to be free from arrest absent an arrest warrant or probable cause." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007). This clearly established right has been recognized by this Court since at least 2007, sixteen years prior to the circumstances in the case as hand. This right emanates from the Fourth Amendment, as noted in Appellee's *First Amended Complaint*. ROA.95.

The contours of a constitutional right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)(citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The precise action need not be previously held unlawful where "in the light of pre-existing law the unlawfulness [is] apparent." *Id.*

In defining whether a right is clearly established, the United States Supreme Court in *Hope v. Pelzer* determined that a regulation can be relevant to the question of whether prior decisions can constitute "fair notice." *Id.*, at 744. The Supreme Court has also further opined, robustly, in regards to fair notice in the criminal statute analogous to §1983.

In *United States v. Lanier*, a criminal case where a former Tennessee state Chancery Court judge was convicted of violating the civil rights of five women by sexually assaulting them, the Court recognized the parallel nature of 18 U.S.C. §242

— a federal criminal statute — and 42 U.S.C. §1983, a civil statute. In particular, the Court opined concerning the analogousness of the "clearly established" standard and the "fair warning" standard:

> So conceived, the object of the "clearly established" immunity standard is not different from that of "fair warning" as it relates to law "made specific" for the purpose of validly applying §242. The fact that one has a civil and the other a criminal law role is of no significance; both serve the same objective, and in effect the qualified immunity test is simply the adaptation of the fair warning standard to give officials (and ultimately, governments) the same protection from civil liability and its consequences that individuals have traditionally possessed in the face of vague criminal statutes.

*U.S. v. Lanier*, 520 U.S. 259, 270-71 (1997). *See also United States v. Stokes*, 506 F.2d 771, 776 (5th Cir. 1975)(noting that 42 U.S.C. §1983 is the "civil counterpart" to §242).

The Court elaborated further, opining that "…general statements of the law are not inherently incapable of giving fair and clear warning..." *Id.* (citing *U.S. v.*

*Lanier*, 73 F.3d 1380, 1410 (6th Cir. 1996)). Integral to this analysis is the Court's finding that "[t]he fair warning requirement also reflects the deference due to the legislature, which possesses the power to define crimes and their punishment." *Id.*, at 265, n. 5 (*See United States v. Wiltberger,* 18 U.S. 76 (1820); *United States v. Aguilar*, 515 U.S. 593 (1995)). By logical extension, due deference paid to the legislature – here, the state legislature – supplies the clearly established law for the purpose of the qualified immunity analysis in this case. *See also United States v. Teel*, 299 Fed. Appx. 387, 389 (5th Cir. 2008)(construing *United States v. Stokes*, 506 F.2d 771, 776 (5th Cir. 1975) as "encompass[ing] a due process right to be free from unreasonable, unnecessary, or unprovoked force by state actors.").

The Third Circuit and Eleventh Circuit have found that one of the ways to show that a right is clearly established is through a promulgated statute. In *Edger v. McCabe*, a case concerning a mechanic falsely arrested while working on a client's vehicle, the Eleventh Circuit established that "a broader, clearly established principle" may be shown to control the "novel facts" of a case, noting specifically that such principle "may be derived from 'general statements of the law contained within the Constitution, *statute* or case law.'" *Edger v. McCabe*, 84 F.4th 1230, 1235 (11th Cir. 2023)(citing *Mercado v. City of Orlando*, 407 F.3d 1152, 1158 (11th Cir. 2005)). In particular, the court held that "the plain text of the Alabama statute is so

clear that no reasonable officer could have interpreted it to permit Mr. Edger's arrest." *Id.*, at 1239.

In *Clark v. Coupe*, a case concerning a Delaware inmate whose relegation to solitary confinement for several months was claimed to have exacerbated his serious mental illness, the Third Circuit held that "[n]otice of clearly established law also came from Delaware's own state legislature." *Clark v. Coupe*, 55 F.4th 167, 187 (3d Cir. 2022).

Noting that the Delaware law outlawed periods of incarceration longer than three months, the Third Circuit noted that it had "consistently considered relevant state statutes when determining if the grant of qualified immunity [was] appropriate." *Id.* (citing *Williams v. Sec'y Pennsylvania Dep't of Corrs.*, 848 F.3d 549, 570-71 (3d Cir. 2022)("finding a related state statute bears on whether Plaintiff's due process rights were clearly established"); *Kane v. Barger*, 902 F.3d 185, 195 (3d Cir. 2018) (recognizing that officer's conduct resembled the statutory crime of indecent assault in denying qualified immunity); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211-12 (3d Cir. 2001)("denying qualified immunity for officer who shot dog after acknowledging state statute defined dogs as the owners' personal property."). The Third Circuit found that "[t]he state of Delaware law at the time…provided reasonable prison officials with fair warning that seven months in isolation…was unlawful." *Id.*

In *E.D. v. Sharkey,* a correctional employee was convicted under a Pennsylvania statute of forcing a female immigration detainee to engage in sexual intercourse. The Third Circuit, in construing qualified immunity in the companion civil case, recognized that the district court noted the defendant's conduct was illegal in Pennsylvania at the time. *E.D. v. Sharkey*. 928 F.3d 299, 308-09 (3d Cir. 2019). The Third Circuit opined further that the fact that "Sharkey's conduct was illegal renders E.D.'s right to be free from sexual assault 'so 'obvious' that it could be deemed clearly established even without materially similar cases.'" *Id.* (citing *Kane v. Barger,* 902 F.3d at 195 (3d Cir. 2018)).

The case before this Court runs parallel to those in *Edger*, *Clark*, and *E.D.* A state statute clearly sets the parameters of legal conduct in the instant case. Section 81.023 of the Texas Government Code, as argued by Appellee to the trial court — and adopted by the trial court — makes unequivocally clear that *only* the Commissioners Court in Texas has the authority to punish one held in contempt by said body. ROA.693-94. No reasonable official could read that statute and believe it conferred upon the County Judge – or any individual – legal authority to hold someone in contempt in the context of the Commissioners Court, irrespective as to Appellant Cantu's alleged confusion on the matter. *See* ROA.690 (quoting Appellant Cantu's testimony during the hearing held on 14 November 2023).

Moreover, the statute builds upon the right to be free from unlawful arrests by imposing a condition precedent for an arrest in this specific context: a decision by the Commissioners Court *collectively*. In this circumstance, it is functionally akin to probable cause: a necessary threshold finding before the Commissioners Court can hold someone in contempt and punish them upon said holding.

Appellee respectfully contends that no prior cases need be referenced for this Court to find that her right to be free from arrest absent lawful authority is recognized where the necessary lawful authority is the preceding Commissioners Court vote. The right is "so obvious" under the statute, where a plain reading – not even an expansive one – clearly shows that a person has a right to be free from a contempt order, in the Commissioners Court context, that is not issued and enforced by the collective body.

The denial of qualified immunity in this case by the trial court is proper under this analysis both in regards to Appellant Cantu and the remaining Appellants, Rios, Ramos, and Ruiz. This is true because the statute clearly apprised Appellant Cantu as to what he was not permitted to do, and the others as to what they could not permit to happen (that is, a unilateral holding of contempt by the County Judge or an individual commissioner). Additionally, the commissioners attend the V.G. Young Institute, where they are "taught how to be a commissioner…" ROA.1152.

Appellant Ramos testified before the trial court, saying that she did not intervene as Appellant Cantu was holding Appellee in contempt. *Id.* She testified further that Appellant Cantu is not the Commissioners Court "by himself;" each of the members has to vote one way or the other on projects before the Commissioners Court; and that Appellant Cantu did not put an action item forward to hold Appellee in contempt. ROA.1153-1154. The trial court also had the opportunity to view the video of the meeting, as it was entered into evidence during the initial preliminary injunction hearing. ROA.50.

Accordingly, the trial court was proper in its denial of qualified immunity to all of the Defendant-Appellants, especially in light of the evidence proffered and testimony adduced at two lengthy hearings.

Appellee further respectfully urges this court to expressly adopt the finding that a statute may provide the clearly established law for the purpose of analyzing qualified immunity, as recognized by the Eleventh and Third Circuits, giving deference to the state legislature, which set the parameters of the law in this case.

3. **S**OVEREIGN **I**MMUNITY IS **I**NAPPROPRIATE IN **T**HIS **C**ASE, AS THE **A**CT IN

   QUESTION IS AN *ULTRA VIRES* ACT

Appellants' claim under sovereign immunity is no more structurally sound than the prior alleged errors, sinking under the weight of the *ultra vires* act at the center of this controversy.

Appellants were all sued both in their official and individual capacities in Appellee's *First Amended Complaint*. ROA.102. The trial court was made aware in briefing prior to that point that such officers were being sued in their official capacities for the "purpose of federal injunctive relief." ROA.1057. At the point suit was initiated against such officers, sovereign immunity was not an issue; and the trial court was made aware of same through Appellee's *Supplement to Plaintiff's Original Complaint and Request for Injunction and Motion for Leave to File an Amended Complaint and Request for Injunction*, filed in advance of the continuation of the preliminary injunction hearing. ROA.56.

Appellee cited *United States v. Abbitt* and *Ex Parte Young* to establish for the trial court that she was purposely seeking injunctive relief against the state actors in addition to money damages, although those had not yet been re-plead. ROA.58. (*See United States v. Abbitt,* 2023 U.S. App. LEXIS 28672 (5th Cir. 2023); *Ex Parte Young*, 209 U.S. 123 (1908)).

Irrespective of the fact that Appellants have offered no authority germane to the instant situation where state actors are sued simultaneously in dual capacities (e.g. individual and official), "a suit against a state official can proceed even in the absence of a waiver of immunity if the official's actions are *ultra vires*." *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). Such a suit requires a plaintiff to "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* (citing *City of El Paso, v. Heinrich,* 284 S.W.3d 366, 372 (Tex. 2009)).

A government officer acts "without legal authority, and thus *ultra vires*, if he exceeds the bounds of his granted authority or if his acts conflict with the law *itself*." *Id.* (citing *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016)(emphasis added)). *Ultra vires* acts "should not be considered acts of the state at all." *Id.* (citing *Cobb v. Harrington*, 144 Tex. 360 (Tex. 1945)).

As established *supra*, the crux of this case is that Appellant Cantu lacked the legal authority to unilaterally hold Appellee in contempt. The law proscribes it by virtue of prescribing who has that authority: the entire Commissioners Court. Consequently, his decision to hold her in contempt was "without legal authority" and thus not an action of the state at all. Moreover, even if the official capacity claim against Appellant Cantu were to be dismissed or invalidated, that would not invalidate or undermine the individual capacity suit Appellee has sought to advance

against him. The statute makes it unequivocally clear that he does not have such power, thus the act being inherently *ultra vires*, and thus unprotected by sovereign immunity because it is in direct conflict with the law.

The trial court declined to extend sovereign immunity to Appellants in the same manner that this court declined to extend qualified immunity to the judge in *Malina v. Gonzales* because the judge in that case had no authority to make arrests. *Malina v. Gonzales*, 994 F.2d 1121, 1126 (5th Cir. 1993). Although advanced under a different theory of immunity, Appellant's sovereign immunity defense is without merit, as the statute is clear in its grant of authority to the collective body and not the individual County Judge. This same logic extends to the individual commissioner defendants, as the statute expressly disallows unilateral contempt holdings and punishments, as was the case here.

Equally unavailing is the Appellants' claim that Appellee needs to bring a *Monell* claim in order to defeat sovereign immunity. Sovereign immunity does not apply in the instant case. Accordingly, the allegation that *Monell* need be plead in this case to cure an inapplicable issue is meritless. But, as the trial court noted, even if it did apply there was a policy evident – "to move forward, 'by hook or by crook,'" – which caused a constitutional injury against Appellee, defeating sovereign immunity in any event. ROA.699.

### III. **THIS COURT HAS NOT FORECLOSED BYSTANDER LIABILITY AS A CLAIM IN NON-LAW ENFORCEMENT CONTEXTS**

"[T]he Fifth Circuit's words have meaning." ROA.697. In *Whitley v. Hanna*, this Court did not foreclose the possibility that bystander liability claims – such as those brought against Appellants Rios, Ramos, and Ruiz – might be brought to vindicate "other constitutional rights" besides those occurring in excessive force claims. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). This Court did not use the term "law enforcement officer" in either *Whitley* or *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995), but instead used "officer." This Court further asserted its use of such language in *Hamilton v. Kindred*, another excessive force case – albeit not one asserted in the common manner of such cases – wherein it did not refine the scope of the officers to whom bystander liability claims can apply. *Hamilton v. Kindred,* 845 F.3d 659 (5th Cir. 2017).

Appellee contends that this court should respectfully not refine the scope any further to only law enforcement officers, finding that this case is an exemplar for the principle noted in n.11 of *Whitley v. Hanna*: that other constitutional deprivations may support liability for officers who are present as they occur and fail to intervene.

In the instant case, the record substantiates that as Appellant Cantu was delivering his soliloquy concerning the issuance of the debt and holding Appellee

29

in contempt, three of the other members of the Maverick County Commissioners Court were looking on and not intervening. Appellant Ramos testified to this end – at least with respect to her own lack of intervention –  during the preliminary injunction hearing. ROA.1152.

This case is emblematic of the Court's notation in n.11 of *Whitley* because of the clarity of the statute and its crystal-clear conferral of authority. In such a case, it is easiest to see manifest such a circumstance where this Court might consider recognition of the bystander liability claim in a non-law enforcement context.

Officers may be liable under §1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. *Hamilton*, at 663 (quoting *Randall v. Prince George's Cty.,* 302 F.3d 188, 204 (4th Cir. 2002)).

Appellant Ramos testified that she attended the VG Young Institute to "be taught how to be a commissioner." ROA.1152: 2-5. Being a commissioner includes knowing the laws pertinent to such service. She also testified that she is a local official whose authority is derived from the state. ROA.1151: 23-25; ROA.1152:1.

The record substantiates that Appellants Rios, Ramos, and Ruiz observed facts that showed Appellee was being held in contempt in violation of the statute,

knowledge of which is imputed upon them by virtue of their prior training and service. Furthermore, they know or perhaps *should* know that this is a violation of the law. As this Court has noted before, "ignorance of the law provides no defense to its violation." *Knapp v. USDA,* 796 F.3d 445 (5th Cir. 2015)(citing *United States v. Wilson,* 133 F.3d 251, 261 (4th Cir. 1997)). This is especially true where you have been trained, as Appellants were, in how to be a commissioner.

At this early stage – the motion to dismiss stage – the trial court's evaluation of the evidence, exhibits, and testimony enabled it to properly construe that a bystander liability claim was properly plead, as the only question at this stage is "…not whether Plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." ROA.213 (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002)). Appellee plead more than enough information to prevail over the motion to dismiss pleading standard, including with respect to bystander liability.

Accordingly, Appellee urges this Court to recognize this factual scenario – and any such scenario where an officer is aware or should be aware a fellow officer's actions are in violation of the law and constitutionally violative – as being appropriate for the application of a bystander liability claim.

## CONCLUSION

This Court should affirm the district court's denial of Appellants' motion to dismiss by the district court and remand this case to the district court for further proceedings consistent with such order.

SUBMITTED BY:
/s/Matthew S. Manning
State Bar No. 24075847
matt@wcctxlaw.com
Webb, Cason & Manning, P.C.
710 N. Mesquite Street
Corpus Christi, TX 78401
T: (361) 887-1031
F: (361) 887-0903
Counsel for Appellee Enriqueta Diaz

## CERTIFICATE OF SERVICE

I certify that on 24 June 2024, the foregoing document has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on all registered counsel of record, and has been transmitted to the Clerk of the Court.


/s/ Matthew S. Manning
**Matthew S. Manning**

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 6,266 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac (2019) in a 14-point font named Times New Roman.


/s/Matthew S. Manning